EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRANCISCO SÁNCHEZ, acusado y apelante.

Núm. 7710.—*Sometido:* Junio 12, 1939. *Resuelto:* Junio 24, 1939.

*Angel García Veve,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

El policía insular Manuel J. Figueroa denunció ante la Corte Municipal de Río Grande a Francisco Sánchez como autor de una infracción al artículo 328 del Código Penal, cometida como sigue: .

". . . en 6 de agosto de 1938, . . . el acusado Francisco Sánchez allí y entonces de una manera ilegal, voluntaria y maliciosamente y mientras manejaba por la carretera Núm. 3, Km. 20–8, que es un cámino público, el automóvil P. 2471 propiedad de Carlos Pacheco, por impericia, negligencia temeraria y descuido, permitió e hizo que el automóvil manejado por el acusado al darle alcance al automóvil P. 2120 manejado por Antero Rodríguez, chocara con este último vehículo resultando ambos vehículos seriamente averiados y como resultado de este choque heridas las siguientes personas: . . ."

Celebrado un nuevo juicio en la Corte de Distrito de San Juan a virtud de apelación interpuesta para ante ella por el acusado, la corte lo declaró culpable y le impuso setenta y cinco dólares de multa.

Apeló Sánchez y en su alegato sostiene que la corte de distrito cometió error manifiesto al apreciar la prueba y actuó movida por pasión, prejuicio y parcialidad.

La evidencia practicada fué breve. Presentados por el fiscal,. declararon Enrique Labault, José Padró y Antero Rodríguez.

Dijo el primero que venía como pasajero de Río Grande para Río Piedras en la parte delantera del carro de Antero Rodríguez. El acusado iba en su carro detrás y tocó *klaxon.*

Rodríguez le dió derecha "y al irle a pasar no sé cómo tropezó con el carro y ahí se originó el choque". El choque fué "por la izquierda, por la mitad del carro". Sánchez iba al pasar a "una velocidad regular, no muy ligero". La carretera era ancha. No se fijó si había algún montón de piedras o no. Resultaron varios lesionados. Rodríguez y Sánchez se detuvieron. Vino la policía a investigar. El carro en que viajaba dió su derecha e iba a velocidad moderada.

José Padró declaró: "El día 6 de agosto venía yo en dirección a San Juan en el carro de Francisco Sánchez, y delante de nosotros venía en la misma dirección el carro de Antero Rodríguez, y el *chauffeur* Francisco Sánchez le tocó *klaxon* a Antero Rodríguez para pasar, y cuando lo mandó a pasar a la parte alante había un montón de tierra, y cuando trató de pasar Francisco Sánchez el otro abrió y después cerró y ahí se enfrentó el carro de Francisco Sánchez con el de Antero Rodríguez y ocurrió el choque, del cual yo recibí un golpe."

Ésa fué su narración corrida. Seguidamente continuó respondiendo al fiscal como sigue:

"P.—¿Ud. dice que Sánchez tocó *klaxon?*

"R.—Sí, señor.

"P.—¿Qué hizo Antero Rodríguez?

"R.—Le dió paso.

"P. ¿Le dió derecha?

"R.—Sí, señor.

"P.—Entonces . . . .

"R.—Había un montón de tierra a la derecha de allá para acá.

"P.—¿En la izquierda no había?

"R.—No señor. Entonces le cerró el carro de Antero Rodríguez al otro lado y ahí hubo el choque.

    ✳       ✳       ✳       ✳       ✳       ✳       ✳

"P.—¿Los montones de piedras se veían?

"R.—Se veían porque estaban a la derecha del otro carro.

"P.—¿Lo veía Ud. desde el carro en que Ud. viajaba?

"R.—No pude fijarme bien. Yo me agolpeé mucho.

    ✳       ✳       ✳       ✳       ✳       ✳       ✳"

Suspendida la vista para unos días después declaró el tercero de los indicados testigos de cargo, Antero Rodríguez, como sigue:

"Yo venía de Río Grande a Río Piedras y después del barrio que dicen Ciénega le había pasado a este joven. Entonces me tuve que parar porque había un montón de piedras en la carretera y yo saqué la mano y desvié un poco y cuando desvié del montón y saqué la mano vino el golpe. Yo venía bastante distante . . . Yo venía bastante retirado y cuando le dí la señal para pasar entonces me tropecé con el montón de piedra, paré, saqué la mano y en seguida vino el *bumper* . . ."

Contestó a la defensa:

"P.—¿Cuando Ud. sacó la mano daba tiempo al acusado a evitar el choque, o fué una cosa rápida?

"R.—Yo encontré el montón de piedras y saqué la mano y no había tiempo de pasar y nos enredamos.

    ※        ※        ※        ※        ※        ※        ※"

Se presentó por la defensa una moción de *nonsuit*. Fué declarada sin lugar. Introdujo su evidencia consistente en el solo testimonio del acusado, quien declaró como sigue:

"P.—¿Ud. oyó la declaración de Antero Rodríguez?

"R.—Sí, señor.

"P.—¿Eso fué cierto?

"R.—Sí, señor.

"P.—¿Ud. manejaba ese vehículo ese día?

"R.—Sí, señor.

"P.—¿Ud. tocó su *klaxon*?

"R.—Sí, señor.

"P.—¿El otro dió su derecha?

"R.—Sí, señor.

"P.—¿Y debido a esa circunstancia le tocó el carro?

"R.—Sí, señor.

"P.—¿Y ése fué el accidente que le ocurrieron a los dos carros?

"R.—Sí, señor.

"P.—¿Cuando sacó la mano el otro *chauffeur* le daba tiempo a parar?

"R.—No había tiempo nada más que para cerrar.

    ※        ※        ※        ※        ※        ※        ※

"P.—¿Ud. venía ligero o despacio?

"R.—Una velocidad moderada.

\*     \*     \*     \*     \*     \*     \*''

Sometido el caso finalmente, dijo el juez:

"La Corte al único testigo que da crédito de todos los que han declarado, es al Sr. Labault y de su declaración se desprende clara y terminantemente que este acusado fué negligente. La Corte Municipal impuso 100 dólares de multa en este caso. Creo que la pena impuesta es algo excesiva. La Corte le impone 75 dólares de multa o un día de cárcel por cada dólar que deje de satisfacer, y las costas."

Se trata de un caso criminal. En el del *Pueblo* v. *Rodríguez*, 47 D.P.R. 600, esta Corte dijo que "La palabra *descuido*, usada en el artículo 328 del Código Penal, no quiere decir una mera falta de cuidado sino un grado de negligencia o descuido mayor que el que de ordinario se requiere para obtener indemnización en un caso civil", y resolvió que "Para declarar a una persona que maneja una locomotora culpable de homicidio involuntario se requiere una negligencia mayor que la que de ordinario se necesita para establecer el derecho a indemnización por daños y perjuicios en una acción civil."

Un examen detenido de la única declaración en que la corte de distrito basó su sentencia condenatoria a la luz de esa jurisprudencia nos lleva necesariamente a concluir que asiste la razón al apelante. ¿De qué parte de ella puede deducirse la negligencia criminal del condenado? A nuestro juicio de ninguna.

Y la conclusión se impone aun con mayor fuerza al considerar las otras declaraciones que contienen una explicación lógica del accidente y que no están en conflicto con la de Enrique Labault.

Ambos autos caminaban a velocidad moderada. Tocó *klaxon* el de detrás pidiendo paso. Lo dió el de delante. La carretera era lo suficientemente ancha a menos que hubiera un obstáculo. El obstáculo surgió en forma de montón de piedras. Al encontrarse con él el auto de delante se desvió ocupando el espacio con que había contado el de detrás

para pasar. Esa explicación parece más lógica que la de que sin motivo alguno y teniendo a su disposición el espacio suficiente, fuera el auto de detrás, al pasar, a chocar con el de delante.

Es cierto que el montón de piedras quizá pudo ser visto por el acusado que guiaba el auto de detrás, pero también pudo y debió serlo por el que guiaba el de delante siendo su negligencia mayor cuando dió paso, ello no obstante. Y en cuanto a que dió paso—lo que pudo inducir al acusado a creer que se le dejaba libre espacio suficiente—y en cuanto a la velocidad moderada de ambos vehículos, no hay discrepancia en la evidencia. La propia única declaración en que se basa la condena es prueba de ello.

*Siendo ésas las circunstancias concurrentes, el recurso debe ser declarado con lugar, revocándose la sentencia apelada y dictándose otra absolviendo al acusado.*

El Juez Asociado Sr. Travieso no intervino.